IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CRICUT, INC., a Delaware corporation,<br><br>Plaintiff,<br><br><br>v.<br><br><br>EUROPE WAREHOUSE GMBH & CO. KG f/k/a KREATIVPLOTTER GMBH & CO. KG, a German company; and TORSTEN JUNG-LENZ, an individual,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br><br>Case No. 2:24-cv-00505<br><br>Judge Tena Campbell |

Before the court is Defendant Torsten Jung-Lenz's motion to dismiss. (ECF No. 48.) Mr. Jung-Lenz moves to dismiss the claims against him under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction; or, in the alternative, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons stated below, the court grants his motion.

## BACKGROUND

According to the allegations in the Second Amended Complaint (SAC, ECF No. 45), Plaintiff Cricut, Inc. (Cricut) is a Delaware corporation whose principal place of business is in Salt Lake County, Utah. (SAC ¶ 1.) Cricut owns certain common law and registered trademarks in both the United States and the European Union. (Id.)

1

Defendant Europe Warehouse GmbH & Co. KG (Europe Warehouse) is a German company that distributes Cricut's machines and other craft products in Germany and Europe. (Id. ¶ 2.)  Mr. Jung-Lenz, also a German citizen, is the "sole proprietor"[1] of Europe Warehouse.

Cricut specializes in the manufacture and sale of machines, goods, and services in the crafting industry.  (Id. ¶ 6.)  The company manufactures and sells electronic cutting machines and heat presses.  (Id. ¶¶ 8–9.)  To protect its intellectual property, Cricut has registered 16 U.S. trademarks and 65 international trademarks, with additional trademark registrations pending. (Id. ¶ 11.)  Cricut also owns many patents and has patent applications pending across the globe. (Id. ¶ 12.)

In late 2018, Cricut agreed to allow Europe Warehouse to distribute Cricut's machines and products.  (Id. ¶ 21.)  At the time, Europe Warehouse was doing business under the name of its predecessor, Kreativplotter GmbH & Co. KG (Kreativplotter).  (Id.)  The companies entered into an agreement on December 21, 2018 (the Distribution Agreement).[2]  (Id.)  The Distribution Agreement specified that Europe Warehouse would "market, promote, and sell" Cricut's products and provided terms about the conditions under which those sales could occur, as well as licensing, termination, and intellectual property rights.  (Id. ¶¶ 22–25.)  The parties agreed to

---

[1] In Germany, a sole proprietorship (Einzelunternehmen) is distinct from a "Gesellschaft mit beschränkter Haftung" (GmbH), which means "company with limited liability" and is akin to a limited liability company (LLC) in the United States.  TMT N. Am., Inc. v. Magic Touch GmbH, 124 F.3d 876, 879 n.1 (7th Cir. 1997) ("A GmbH is somewhat analogous to an American limited liability company."); see also Mueller v. Potsch, No. 4:11-cv-47, 2013 WL 1290836, at *1 n.1 (N.D. Ind. Mar. 28, 2013) (observing that courts have treated GmbHs like corporations for jurisdictional purposes, but warning that a plaintiff should plead the citizenship of each member of a GmBH when asserting that a federal court has diversity jurisdiction).  Outside of this reference to Mr. Jung-Lenz as a sole proprietor, Cricut does not allege that Europe Warehouse is, despite its name, a sole proprietorship.

[2] Cricut attached a copy of the Distribution Agreement to its First Amended Complaint.  (See ECF No. 9-1.)

litigate any dispute arising out of the agreement in a state or federal court in Salt Lake City, Utah.  (Id. ¶ 74.)  Mr. Jung-Lenz signed the Distribution Agreement as the "proprietor" of Kreativplotter.  (See Distribution Agreement, ECF No. 9-1 at 13.)

Included as Exhibit E to the Distribution Agreement was a "Confidentiality and Nondisclosure Exhibit" (the Confidentiality Exhibit).  (SAC ¶ 29; ECF No. 9-1 at 30.)  The Confidentiality Exhibit stated that the parties entering into that agreement were Cricut and "the named Distributor set forth in the Agreement to which this Confidentiality Exhibit is attached ("Receiving Party")."  (ECF No. 9-1 at 30.)  According to the terms of that document, "Receiving Party agrees that this Confidentiality Exhibit shall be binding upon the Receiving Party individually, and in Receiving Party's capacity as a representative of Receiving Party's Company."  (Id.)

The relationship between the companies deteriorated and Cricut filed suit on July 17, 2024, alleging two causes of action against Europe Warehouse for breach of contract and breach of the implied covenant of good faith and fair dealing.  (Compl., ECF No. 1.)  In the SAC, Cricut additionally brought its cause of action for breach of contract against Mr. Jung-Lenz.  (See SAC ¶¶ 75–81.)

## ANALYSIS

Mr. Jung-Lenz moves to dismiss the breach of contract claim on the grounds that the court lacks personal jurisdiction over him.  Mr. Jung-Lenz also maintains that Cricut fails to state a claim upon which the court may grant relief.

"Personal jurisdiction can be acquired through either general jurisdiction or specific jurisdiction."  Xmission, L.C. v. Fluent LLC, 955 F.3d 833, 840 (10th Cir. 2020).  Because Cricut does not allege that Mr. Jung-Lenz had "continuous and systematic" contacts with Utah,

3

the court lacks general jurisdiction over him.  See Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1078 (2008) (citation omitted).  In contrast, "[s]pecific jurisdiction … allows a court to exercise jurisdiction over an out-of-state defendant only for claims related to the defendant's contacts with the forum State."  Xmission, 955 F.3d at 840.

To determine whether this court has specific jurisdiction, the court must analyze whether exercising jurisdiction over Mr. Jung-Lenz comports with due process.[3]  Id. at 839.  The court therefore considers whether the Mr. Jung-Lenz has minimum contacts with Utah "such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'"  Dudnikov, 514 F.3d at 1070 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  In other words, Mr. Jung-Lenz's contacts with the forum state "must be such that the defendant should reasonably anticipate being haled into court there.'"  Xmission, 955 F.3d at 839–40 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).  "Specific jurisdiction is proper if (1) the out-of-state defendant 'purposefully directed' its activities at residents of the forum State, and (2) the plaintiff's alleged injuries 'arise out of or relate to those activities.'"  Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

Cricut has the burden to establish jurisdiction.  See id. at 839.  But because the court is not conducting an evidentiary hearing, Cricut need only make a prima facie showing that personal jurisdiction exists.  See id.  Cricut may establish jurisdiction through affidavits or other

---

[3] "A federal court may not exercise personal jurisdiction over an out-of-state defendant unless (1) an applicable statute authorizes service of process on that defendant and (2) the exercise of statutory jurisdiction comports with constitutional due process."  Xmission, 955 F.3d at 839.  Utah's long-arm statute applies, but it "confers jurisdiction 'to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution.'"  Id. (quoting Fenn v. Mleads Enters., Inc., 137 P.3d 706, 710 n.10 (Utah 2006)).  "The two-step analysis thus collapses here into a single due-process inquiry."  Id.

written materials, including the complaint (to the extent the Defendants have not presented evidence contradicting those allegations).  See id.  The court must take uncontroverted well-pled allegations in the complaint as true.  See Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995).

Cricut asserts that the court need not conduct a traditional minimum contacts analysis because Mr. Jung-Lenz has consented to the exercise of jurisdiction.  See Olivares v. C.R. England, Inc., No. 2:22-cv-123-JNP, 2022 WL 3025974, at *2 (D. Utah Aug. 1, 2022) ("[P]ersonal jurisdiction … can be waived by a party's express or implied consent to jurisdiction.").  Specifically, Cricut maintains that Mr. Jung-Lenz is bound by a mandatory forum selection clause, which is a clause that indicates an exclusive forum for the resolution of disputes related to or arising out of the contract and is "dispositive as to consenting to personal jurisdiction …."  See Waste Servs., LLC v. Red Oak Sanitation, Inc., No. 2:08-cv-417-DS, 2008 WL 2856459, at *1 (D. Utah July 23, 2008) (citing K & V Scientific Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW"), 314 F.3d 494, 498 (10th Cir. 2002)).

Here, the Distribution Agreement states:

> Any legal suit, action, or proceeding arising out of or relating to this Agreement must be instituted in the federal courts of the United States of America or the courts of the State of Utah, in each case located in Salt Lake City, Utah, and each Party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding.

(ECF No. 9-1 at 11.)  Because the language designating Utah courts as the appropriate forum is mandatory, Cricut asserts that Mr. Jung-Lenz has consented to the exercise of jurisdiction.

But Mr. Jung-Lenz is not a party to the Distribution Agreement: the agreement is between Cricut and Europe Warehouse's predecessor, Kreativplotter.  Mr. Jung-Lenz signed the Distribution Agreement only in his capacity as "proprietor" of the company, which even Cricut

5

recognizes was an action taken in his representative capacity.  And Cricut has not alleged that Europe Warehouse was, in fact, a sole proprietorship rather than a limited liability company. Nor has Cricut alleged an alter ego theory of liability such that the court could attribute Europe Warehouse's contacts to Mr. Jung-Lenz personally.

No matter, Cricut suggests, as Cricut instead argues that Mr. Jung-Lenz is bound by the Confidentiality Exhibit both "individually" and in his "capacity as a representative" of Europe Warehouse.  And based on his assent to be individually bound by an addendum to the Distribution Agreement, Cricut maintains that Mr. Jung-Lenz is also bound by the Distribution Agreement as a whole—including by that document's forum selection clause.

The court is not persuaded.  The Confidentiality Exhibit explicitly states that the parties entering into the confidentiality agreement in that addendum are Cricut and "the named Distributor set forth in the Agreement to which this Confidentiality Exhibit is attached ("Receiving Party")."  (ECF No. 9-1 at 30.)  There is no question that the named Distributor is Kreativplotter, "a German corporation having its office [in] Wuppertal, Germany ("Distributor")."  (ECF No. 9-1 at 1.)  According to the terms of the Confidentiality Exhibit, it is therefore Kreativplotter, not Mr. Jung-Lenz, who "agrees that this Confidentiality Exhibit shall be binding upon [Kreativplotter] individually, and in [Kreativplotter's] capacity as a representative of [Kreativplotter's] Company."  (Id. at 30.)

The court recognizes that it is meaningless to refer to a company as a representative of that company's company.  But this poor drafting does not render the contract ambiguous— especially where it is Cricut who drafted the document.  The Distribution Agreement is a contract between two companies, and an unsigned addendum to the overarching agreement cannot impose individual liability on the representatives of those companies—especially where

that addendum specifically states that it is the companies who have entered into the agreement contained in that addendum.  Cricut has not pointed to any other evidence that Mr. Jung-Lenz intended to be bound individually to the agreement he signed on behalf of his company and is therefore not a party to that contract.

Because Mr. Jung-Lenz is not a party to either the Distribution Agreement or the attached Confidentiality Exhibit, he is not bound by the Distribution Agreement's forum selection clause. The court therefore finds no evidence that Mr. Jung-Lenz consented to this court's exercise of jurisdiction over him.  And because Cricut presented no other arguments to support the exercise of the court's jurisdiction, the court need not address the other arguments raised by the parties concerning whether the forum selection clause survived the termination of the Distribution Agreement and whether Cricut stated a claim against Mr. Jung-Lenz for which the court may grant relief.

<strong>ORDER</strong>

For the foregoing reasons, the court GRANTS Mr. Jung-Lenz's Motion to Dismiss (ECF No. 48) and dismisses the claims against him without prejudice for lack of personal jurisdiction. The Plaintiff's claims against Europe Warehouse remain pending.

DATED this 30th day of March, 2026.

BY THE COURT:

Tena Campbell
Tena Campbell
United States District Judge